UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
DARIO OSORIO-NORENA,            )
                                )
            Petitioner          )
                                )
      v.                        )      CIVIL ACTION
                                )      NO. 09-10069-RCL
UNITED STATES OF AMERICA,        )
                                )
            Respondent          )
_____)

MEMORANDUM OF DECISION

YOUNG, D.J.                              September 24, 2009

## I.   Introduction

Dario Osorio-Norena ("Osorio" or "Petitioner") proceeding pro se, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Pet'r Mot. [Doc. No. 759]. Osorio pled guilty to one count of conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846, and one count of conspiracy to launder drug proceeds in violation of 18 U.S.C. § 1956(h).  Osorio also tendered an Alford[1] plea to one count of distribution of five or more kilograms of cocaine in

_____

[1]Pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), a defendant entering an Alford guilty plea is not required to admit guilt but may "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."  United States v. Bierd, 217 F.3d 15, 17 n.1 (1st Cir. 2000) (quoting Alford, 400 U.S. at 37).

violation of 21 U.S.C. § 841(a)(1).

In his present motion, Osorio seeks relief under the provisions of 28 U.S.C. § 2255, claiming he received ineffective assistance of counsel based on his counsel's alleged failure to: 1) subpoena alibi and rebuttal witnesses; 2) permit or prepare Osorio to testify on his own behalf during the evidentiary hearing before sentencing; 3) move to strike the leadership aggravating factor in the fourth superseding indictment; 4) inform Osorio of the potential fine at the time of the sentencing hearing; and 6) request downward departures from the range provided by the sentencing guidelines.  Additionally, Osorio claims that his plea itself was involuntary; he asserts that he pled guilty under pressure from other co-conspirators and in response to defense counsel's promise of a plea agreement with the government for a reduced sentence.

## II.  Background

On August 25, 2004, a federal grand jury returned a fourth superseding indictment against Osorio and his co-defendant, Jhon Jairo Arango ("Arango"), charging each of them with three counts: conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count One); conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h) (Count Two); and distribution of five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Three).  <u>United States</u>

v. <u>Arango</u>, 508 F.3d 34, 36 (1st Cir. 2007).

A jury trial was scheduled to begin on March 21, 2005. That morning, Osorio's defense counsel, Martin Leppo, informed the Court that his client wished to plead guilty to the first and second counts, conspiracy to distribute cocaine and conspiracy to launder drug proceeds, but enter an <u>Alford</u> plea to the third count of the indictment, distribution of five or more kilograms of cocaine. Change of Plea Hr'g Tr. 5:1-20, Mar. 21, 2005 ("Change of Plea") [Doc. No. 690.].

The Court conducted a fourteen-day evidentiary sentencing hearing to determine the amount of drugs and money attributable to each defendant. During the hearing, the government presented testimony from several law enforcement officers who testified that Osorio and Arango were arrested and extradited to Massachusetts from Colombia as part of an investigation that also led to the indictment of fourteen other co-conspirators. Two of the other conspirators were cooperating witnesses who testified at the hearing, Liliana Cruz ("Cruz") and Jorge de Jesus Vallejo Alarcon ("Vallejo").

Cruz's testimony comprised the majority of the evidentiary hearing. She testified that she transported drugs from New York to Massachusetts in 1998 and 1999 on Osorio and Arango's behalf as well as laundering money for them in 2000. Cruz stated she conveyed cocaine from New York on five separate occasions and

that each trip was arranged at Osorio's request.  <u>Arango</u>, 508
F.3d at 37.  She testified that she picked up drugs either in
Queens or in the Bronx.  <u>Id.</u>  During her Queens trips, she called
Osorio upon arriving at the designated location.  Next, the
person delivering the narcotics called her mobile phone.  <u>Id.</u>
She would meet the delivery person, inspect the cocaine quantity,
and transport the cocaine to Massachusetts.  <u>Id.</u>  Once she
arrived, Cruz called Osorio, told him where she had parked, and
left the drugs in the unlocked car.  <u>Id.</u>  The following morning,
the car would be returned to her without the drugs.  <u>Id.</u>  Her
trips from the Bronx had a similar modus operandi.  She left her
unlocked car in a pre-arranged location and returned after the
drugs were placed in the vehicle.  <u>Id.</u>

     Cruz testified that she delivered fifty kilograms of cocaine
on her first trip from Queens to Massachusetts and ten kilograms
on her second trip.  <u>Id.</u> at 38.  On her two trips from the Bronx,
she delivered fifty and twenty-five kilograms, respectively.  On
her fifth trip, she brought an additional fifty kilograms of
cocaine.  Cruz testified that Osorio informed her Arango was the
source of the drugs she obtained in Queens but was not certain
whether her Bronx deliveries were Arango's as well.  She further
testified that on one trip, Osorio met her in Queens, transferred
fifty kilograms to her, and directed her to transport the drugs
to Massachusetts.  <u>Id.</u>  Cruz attested to Osorio's involvement in

a total of 185 kilograms: sixty kilograms picked up in Queens in two trips; seventy-five kilograms picked up in two trips to the Bronx; and the fifty additional kilograms that she received directly from him during her third trip to Queens.  Id.

Cruz also testified that she transported money from New York to Massachusetts on three separate occasions, in the amounts of $500,000, $600,000, and $500,000, respectively.  Id. at 38.  She stated that each of these trips were made at Osorio and Arango's request.  Id.  Cruz stated that she received deliveries of smaller amounts of money from Alonso Tavarez and two brothers with the surname Cataño.  Id.  She testified that Arango or Osorio called her in advance of each money delivery.  Id.  Osorio and Arango directed her as to the distribution and mailing of those monies, which together totaled $699,000.  Osorio also instructed her on how to ship money to Colombia undetected by hiding it in electronic toys.  Id.  Occasionally, Cruz wired small amounts of money to Osorio and Arango.  Cruz further testified that she delivered money to other members of the conspiracy in the United States at Osorio and Arango's direction. She kept records of the amounts of money collected and delivered to various parties and she retained her shipping receipts until either Arango or Osorio confirmed receiving the money.  Id. Cruz's testimony was corroborated by myriad forms of evidence including telephone conversations with Osorio and Arango, records

seized from Cruz's house after her arrest, as well as testimony
from law enforcement agents and co-conspirator Vallejo.  Id.

On the last day of the evidentiary hearing, the Court heard
arguments from defense counsel about the sentencing factors,
disputed quantities of narcotics and amounts of money.
Evidentiary Hr'g Tr. 43:12-70:12, May 20, 2005 ("Evidentiary
Hr'g") [Doc. No. 727].  Osorio's counsel argued that Osorio's
role in the offense was merely that of the introducer, and that
he was therefore substantially less responsible for the
narcotics.  Id. at 65:7-66:25.  The Court took a recess and made
findings of fact on the record for the purpose of sentencing.
Id. at 85:11-95:7.

Having found that Cruz was a credible witness whose
testimony was substantially corroborated, the Court found Osorio
and Arango responsible for at least 67 kilograms of cocaine on
the drug charges, adding together 60 kilograms from the two trips
Cruz made to Queens on defendants' behalf along with the
additional seven kilograms she purchased from Tavarez, who
received the cocaine from Arango and Osorio.  Arango, 508 F.3d at
38.  The Court also found Osorio and Arango responsible for
laundering $1,800,000 on that charge, calculating the total from
the $500,000 and $600,000 that Cruz testified she retrieved from
New York at defendants' request in the spring of 2000, plus the
roughly $700,000 that was delivered to her in small amounts by

6

the Cataño brothers and Tavarez.   Id. at 38-39.[2]

In September 2005, Osorio's defense counsel filed two
separate sentencing memoranda requesting downward departures.
[Doc. Nos. 671-72].   The first requested a downward departure
under United States Sentencing Guidelines ("Sentencing
Guidelines") §3E1.1 for sparing the government the burden and
expense of a trial. [Doc. No. 671 at 5].   The second memorandum
requested a downward departure from Category II pursuant to
Sentencing Guidelines § 4A1.3 based on overstated criminal
history.   Osorio's counsel contended that the defendant's prior
criminal history arose from a single driving under the influence
incident over thirteen years prior in which no one was injured
and that Osorio completed alcohol and substance abuse counseling.
[Doc. No. 672 at 2].

Osorio's sentencing hearing was held on January 30, 2006.
The Court found that Osorio and Arango were equally responsible
and sentenced them each to 262 months in prison, followed by five
years of supervised release.   In addition, the Court imposed a
$2,000,000 fine and a special assessment of $300.

Osorio and Arango appealed their sentences.   Osorio was
represented by different counsel on appeal.   He claimed that the

---

[2]There was a discrepancy in the total as a result of the
government's calculation error, however the Court declined to
amend the finding and explained that the correction did not alter
the sentencing guidelines range.   Arango, 508 F.3d at 39, n.1.

district court: (1) improperly based his sentence on facts not found by the jury beyond a reasonable doubt and, even under the preponderance-of-the-evidence standard, (2) incorrectly calculated the quantity of drugs and the amount of laundered money for which he was held responsible; (3) failed to consider the 18 U.S.C. § 3553(a) sentencing factors; (4) erred in its determination whether a fine should be assessed against him; (5) improperly found that he played a leadership role in the drug conspiracy; and (6) erred in granting only a two-level reduction in offense level for sparing the government the burden and expense of a trial.  Arango, 508 F.3d at 37.  Osorio also claimed that the government breached an unwritten plea agreement.  Id. The First Circuit denied all Osorio's claims and affirmed both sentences.  Id. at 49.

**III. Analysis**

    A.   Standard of Review

    Section 2255 of Title 28, United States Code, provides that a prisoner in custody under sentence of a federal court may move the court which imposed the sentence to vacate, set aside, or correct a sentence on the grounds that the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. §

2255.  A petitioner bears the burden of demonstrating by a preponderance of the evidence that he is entitled to Section 2255 relief.  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  Petitioners are also entitled to an evidentiary hearing "unless the facts alleged are 'contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact.'" United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009) (quoting United States v. Crooker, 729 F.2d 889, 890 (1st Cir. 1984) (internal citation omitted)).

B.   Standard for Ineffectiveness of Counsel

The Supreme Court has held the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  Judicial review of an ineffective assistance claim is highly deferential and courts must endeavor "to eliminate the distorting effects of hindsight."  Id. at 689.  "The Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining."  United States v. Natanel, 938 F.2d 302, 309-310 (1st Cir. 1991).

Ineffective assistance of counsel claims are evaluated under the standards set forth in Strickland and its progeny.  To prevail on an ineffective assistance of counsel claim, a

petitioner must demonstrate: (1) deficient performance by counsel
that (2) caused prejudice to the petitioner.  Strickland, 466
U.S. at 687.  Counsel may be deemed deficient if it is
demonstrated that the representation falls "below an objective
standard of reasonableness."  Id. at 688.  In demonstrating the
"deficient performance" element, the petitioner must overcome the
"strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance; that is, the
[petitioner] must overcome the presumption that, under the
circumstances, the challenged action 'might be considered sound
trial strategy.'"  Id. at 687 (internal citations omitted).
Moreover, "strategic choices made after thorough investigation of
law and facts relevant to plausible options are virtually
unchallengeable."  Id. at 690.

The element of prejudice requires a demonstration that "the
possibility of a different outcome must be substantial" though it
does not require that counsel's conduct more likely than not
altered the case's outcome.  Ouber v. Guarino, 293 F.3d 19, 25-26
(1st Cir. 2002) (citing Strickland, 466 U.S. at 693).

C.   Failure to Subpoena Witnesses

Osorio argues that his defense counsel was deficient in
allegedly failing to subpoena witnesses who could potentially
contradict Cruz's testimony regarding Osorio's role in the drug
trafficking and the amounts of money involved.  In his petition,

Osorio claims counsel failed to subpoena his cousin, Arturo
Catano Garcia, Jorge Catano Garcia, Reinaldo Barriento, and his
wife, Marlene Catano.  Pet'r Mot. at 5-5(a).  Osorio avows that
Barriento could have clarified the quantity of the drugs that he
and Cruz delivered from Queens, New York to Boston,
Massachusetts.  The petition includes an affidavit from Arturo
Catano-Garcia ("Catano Garcia") stating that Osorio never
delivered any illegal drugs to him through any means, including
through third person delivery.  Id., Ex. A.  Catano Garcia
further attests that he has never had any contact, direct or
indirect, with Alonso Tavarez, and that Osorio did not deliver
drugs to Catano Garcia for the purpose of delivering the
narcotics to Alonso Tavarez.  Osorio's defense counsel also
represented Arturo.  Id.  Catano Garcia avers that although
counsel communicated to him that he would legally certify
Arturo's statement about Osorio's role and enter it in Osorio's
case, counsel did not submit such a document to the Court.  Id.
Osorio's petition also includes an affidavit from his co-
defendant Arango.  Id., Ex. B.  Arango attests that Osorio
introduced Cruz to him for the sole purpose of facilitating money
transfers from the United States to Colombia.  Id.

    A petitioner has the right under the Sixth Amendment to call
witnesses "whose testimony is 'material and favorable to his
defense.'"  Rock v. Arkansas, 483 U.S. 44, 52 (1987).  If

petitioner alleges that his counsel acted in error in failing to subpoena witnesses, he must overcome the Strickland strong presumption that the decision was legal strategy.  466 U.S. at 687.  "[A] defendant must allege and demonstrate that his counsel's error clearly 'resulted from neglect or ignorance rather than from informed, professional judgment.'"  Barrett v. United States, 965 F.2d 1184, 1193 (1st Cir. 1992) (quoting United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)(emphasis in original)).

Osorio does not allege that his counsel failed to investigate alibi or rebuttal witnesses out of negligence or ignorance.  Nor does he allege that defense counsel's strategy resulted from any failure to conduct a "thorough investigation of law and facts," as required by Strickland, 466 U.S. at 690.

There is little reason for the Court to suspect counsel's failure to present these witnesses was anything other than a tactical decision.  The fact that counsel also represented Catano Garcia and allegedly discussed Osorio's case with him supports a reasonable inference that counsel's decision not to subpoena these witnesses was strategic.  The decision whether to call a particular witness involves the weighing of risks and benefits; it is "almost always strategic."  Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993).  Moreover, "the availability of the putative testimony was problematic at best."  Id. at 54 (finding

petitioner's ineffectiveness of counsel claim for failure to call co-conspirator to the stand is weakened where co-conspirator's testimony may not have been available to petitioner without that co-conspirator waiving his own Fifth Amendment right against self-incrimination).  Although Osorio has obtained a supporting affidavit from his co-defendant for this proceeding, the Court cannot assume that Arango would have waived his Fifth Amendment privilege in advance of his own sentencing to testify on Osorio's behalf.  Id. at 55 n.6.  Even taking all of Osorio's allegations as true, petitioner fails to demonstrate that his attorney was deficient in making a strategic choice not to call these witnesses.

Furthermore, Osorio fails to demonstrate prejudice.  Even taking the affidavits as true, neither of them address the basis for Osorio's sentence.  The Court made its findings of facts based on Cruz's testimony.  Neither of these affidavits undermine Cruz's testimony about transporting narcotics under Osorio's direct supervision and on his behalf.  In addition, these affidavits do not counter the testimony of law enforcement officials and the documentary evidence that corroborated Cruz's testimony about Osorio's involvement in the narcotics and money laundering operations.  The decision to present a witness's testimony must be evaluated "in light of whatever trial strategy reasonably competent counsel devised in the context of the

particular case." <u>Lema</u>, 987 F.2d at 55.  If, in light of an informed professional judgment, a particular defense is implausible or unsubstantial as matter of law, counsel is not deficient for failing to pursue it.  <u>Id.</u>

D.    Failure to Prepare Defendant to Testify on His Own
      Behalf

In addition to asserting that defense counsel failed to subpoena witnesses, Osorio contends that counsel refused to permit him to testify on his own behalf during the evidentiary hearing.  He asserts that although he indicated to counsel that he wanted to testify, counsel discouraged him from testifying and did not prepare him to take the stand.

A criminal defendant has a constitutional right to testify on his own behalf.  <u>Rock</u>, 483 U.S. at 51-53.  The Supreme Court has held that should a defendant decide it is to his benefit to do so, the right to testify on his own behalf is "[l]ogically included" in the accused's Sixth Amendment right to call witnesses whose testimony are material and favorable to his own defense.  <u>Id.</u> at 52.  This right to testify "may not be waived by counsel acting alone."  <u>Owens</u> v. <u>United States</u>, 483 F.3d 48, 58 (1st Cir. 2007).

Osorio claims that his constitutional right to testify on his own behalf was infringed.  His own account of counsel's discussion with him about testifying does not, however, support

14

his contention.  A petitioner may not proceed to an evidentiary hearing based on a mere conclusory allegation that his attorney prevented him from testifying on his own behalf where his allegations are not highly specific and lack any independent corroboration.  See Siciliano v. Vose, 834 F.2d 29, 30-31 (1st Cir. 1987) (holding petitioner was not entitled to an evidentiary hearing on the allegation that his attorney prevented him from testifying against his wishes where affidavit and record indicated that petitioner knew he could speak but perhaps counsel strongly advised against it).  Here, as in Siciliano, the petitioner's affidavit and the record suggests that he knew that he could testify but was strategically dissuaded from so doing by defense counsel.  Based on Osorio's own account, counsel pointed out to him that although he might testify on his own behalf, it was unadvisable and potentially self-incriminating.  Pet'r Mot. at 6(a).  "Mr. M. Leppo during the 14 fourteen days of the evidenciary [sic] Hearing notified Dario Osorio that he can say whatever he want [sic] but be carefull [sic] because everything you say can be used against you."  Id.  According to his own statement, counsel's decision not to put Osorio on the stand was an informed, strategic judgment.

Moreover, Osorio does not allege that counsel compelled him to waive his right to testify.  There is no evidence in the record or proffered by Osorio that counsel attempted to coerce

15

Osorio's testimonial decision.  "Unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right."  Lema, 987 F.2d at 52.  Osorio may not prevail on an ineffective assistance of counsel claim where upon advice of counsel, he knowingly, if reluctantly, chose not to testify in his own defense.  Id.

E.    Failure to Move to Strike the Additional Factor

As a third basis for his ineffective assistance claim, Osorio argues that counsel failed to move to strike the "Notice of Additional Factors" section in the Fourth Superseding Indictment.  Pet'r Mot. at 8.  Petitioner mischaracterizes the record.  The record demonstrates that counsel moved to strike this surplus language in the fourth superseding indictment.  [Doc. No. 629.]  The Court agreed and entered an order on March 10, 2005 granting the motion to strike the language.  It is self-evident that a claim for ineffectiveness of counsel falters where counsel was successful.

F.    Failure to Inform Petitioner of the Potential Fine

Osorio's next claim is that counsel failed to advise him of the potential fine that was imposed upon him at the time of sentencing.  Even had counsel failed to advise Osorio that he could face a fine as part of his disposition, such a failure would not rise to the level of ineffective assistance.

With regard to pleas, the first half of the Strickland

standard test is measured by whether the performance fell "below an objective standard of reasonableness." Id. at 687-88.  The prejudice requirement focuses on whether the allegedly deficient performance affected the outcome of the plea process.  "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Osorio does not allege that he would not have pleaded guilty had he known about the fines.  When Osorio changed his plea, the Court specifically advised Osorio of the potential maximum fines and special assessments for each of the counts in the superseding indictment individually and Osorio confirmed that he understood the penalty.  Change of Plea Tr. 18:10-20:11.  Based on the record and his own allegations, Osorio cannot demonstrate a reasonable probability that but for the alleged error of counsel to inform him of the fine, he would not have entered a guilty plea.  Hill, 474 U.S. at 59.  He fails the second prong of the Strickland analysis and therefore cannot maintain an ineffective assistance of counsel claim on this basis.

Osorio also contends that his counsel was ineffective because he failed to object to the imposition of the fine.  Pet'r Mot. at 9.  This argument is belied by the record.  During the

17

sentence, counsel implored the Court not to impose a fine on
Osorio, stating, "I would ask the Court to find that Mr. Osorio
does not have any money, and, therefore, if a fine is imposed
that it be done without any interest so that that will not become
a factor if and when he ever can pay a fine." Sentencing Tr.
55:18-22, Jan. 30, 2006 ("Sentencing"). Counsel's assistance is
not ineffective merely because his efforts were unsuccessful.
Natanel, 938 F.2d at 309-10 (noting that there is no
constitutional right to a successful defense).

    G.   Failure to Request Downward Departures

    Osorio claims that defense counsel provided ineffective
assistance at his sentencing, alleging counsel failed to request
departures based on: (1) his pre-trial conditions of confinement,
(2) his allegedly minor role in the criminal activity, and (3)
the fact that he will be deported upon completion of his
sentence. Pet'r Mot. at 10-10(a). Osorio's recollection is
contradicted by the record where counsel asserted each and every
one of these claims. Counsel discussed the intense conditions of
Osorio's pre-trial confinement in Colombia and his subsequent
isolation in a Plymouth correctional facility. Sentencing Tr.
56:11-18. Counsel described in detail the stark isolation Osorio
endured during these three years secluded from family and even
other prisoners. Id. As to his role in the criminal operations,
counsel consistently maintained that Osorio did not have a

leadership role in the criminal activity.  Counsel argued that Osorio was being held responsible though he was "an introducer" of the co-conspirators rather than a leader.  Evidentiary Hr'g Tr. at 65:7-14.  In addition, Counsel requested the Court consider applying a sentence below the guidelines range given that Osorio will inevitably be deported after his prison sentence is concluded.  Sentencing Tr. at 55:23-56:3.  Osorio cannot sustain an ineffectiveness of counsel claim where his attorney made stalwart but unsuccessful arguments to the Court.  See Oliveras, 717 F.2d at 3-4 ("tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.").

H.   Involuntary Guilty Plea and Alleged Plea Agreement

Osorio claims that his plea was involuntary and not of his free will.  He maintains that co-conspirators were threatening him and his family in order to pressure him to plead guilty.  He also asserts that defense counsel promised him a plea agreement with the prosecution.  Osorio further alleges that he was induced to plead because he was being threatened by the other co-conspirators in the drug and money laundering scheme.

Osorio claims counsel told him that he had a "deal" for him to serve a twelve year, seven month sentence.  Osorio asserts that he unwillingly entered into an Alford plea to Count III based on a conversation with his attorney who deceived him.

19

Osorio claims that defense counsel told him that he needed to plead guilty to distributing five kilograms of cocaine and that he would receive departures from the sentencing guidelines. Pet'r Mot. at 11.

The Court asked Osorio at his change of plea hearing whether anyone made promises to him to get him to enter his change of plea and whether anyone was forcing him to plead guilty. Change of Plea Tr. 16:15-22. Both times Osorio answered in the negative. Id. Furthermore, the Court explained that although Leppo may have given Osorio his best estimate for the likely sentencing, the Court's determination "may be different from the estimate Mr. Leppo has given you, and on that basis my determination of what sentence to impose may be different from the sentence he has estimated for you." Change of Plea Tr. at 21:17-22. Osorio confirmed that he understood. Id. Petitioner's own statements on the record contradict his assertions that his plea was involuntary or that he pled guilty on the basis of a promised plea agreement. Where proceeding transcripts demonstrate that the petitioner was aware that the judge was not a party to any purported agreement, the Court may properly deny the claim without an evidentiary hearing. See United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (holding petitioner failed to reasonably substantiate his ineffective assistance of counsel claim with any material issues of fact and

thus did not overcome the "presumption of regularity" imported by the record in which the court undertook detailed inquiry of the petitioner's understanding of consequences of the plea).  Having reviewed the actual record, this Court is satisfied that Osorio's plea was voluntary and was not induced by any claimed ineffective assistance of counsel.

**IV.  Conclusion**

Each of Osorio's allegations are contradicted by the record or fail to state a claim for relief under Section 2255. Accordingly, Osorio is not entitled to an evidentiary hearing. David, 134 F.3d at 477.  For the foregoing reasons, Osorio's petition is denied.


SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE